IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-039 |
| | ) | |
| JASON WAYNE MORRIS | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

The indictment charges Defendant Jason Wayne Morris with two counts of possession of a firearm by a prohibited person, two counts of possession with intent to distribute a controlled substance, and one count of possession of a firearm in furtherance of a drug trafficking offense.  (Doc. no. 1.)  Defendant moves to suppress evidence seized on May 26, 2017, during a search of his residence at 1852 East Warrenton Road in Warrenton, Georgia.  (Doc. no. 19.)  Upon consideration of the briefs and hearing testimony on October 12, 2017, the Court **REPORTS** and **RECOMMENDS** Defendant's Motion to Suppress (doc. no. 19) be **GRANTED**.

I. **FACTS**

Counts One and Two of the indictment charge Defendant with possession of a firearm by a prohibited person and possession with intent to distribute a controlled substance on October 13, 2016.  Counts Three and Four assert the same charges except the alleged offense date is May 26, 2017.  Count Five charges Defendant with possession of a firearm in furtherance of a drug trafficking offense on May 26, 2017.  The Motion to Suppress concerns Counts Three to Five because it alleges invalidity of a warrant executed on the

second offense date of May 26, 2017.

Corporal Brian Adams is a Georgia game warden with two decades of experience. (Court's recording system, *For the Record* (hereinafter "FTR") 10:47:52 – 10:48:01, 10:49:10 – 10:49:13.)   The only witness to testify at the suppression hearing, Corporal Adams described the investigation of Defendant and search of Defendant's residence at 1852 East Warrenton Road on May 26, 2017.

The investigation began on May 8, 2017, when a family by the last name of Kitchens reported someone hunting alligators illegally in their private pond on East Warrenton Road. (FTR 10:54:01 – 10:54:22.)   Finding a baited hook at the pond, Corporal Adams set up a surveillance camera on May 9, 2017, and retrieved the camera six days later.  (FTR 10:54:56 – 10:55:03.)  The camera recorded two white males approach the area in a gray Ford truck.  (Doc. no. 22-1, p. 2.)  One of the males, later identified as Defendant, walked from the truck to a fishing pole set up at the edge of the water while his companion scanned the pond surface with a scope-mounted rifle.  (FTR 10:58:14 – 10:58:21, 10:59:12 – 10:59:36.)  Defendant retrieved a fishing pole with a treble hook from the truck and cast it into the pond near the fishing pole to drag the bottom.  (FTR 10:59:50 – 11:00:06.)  The males left the pond without any quarry. Corporal Adams described their actions as common practices for hunting alligators.  (FTR 11:00:07 – 11:00:10.)

While Corporal Adams could not identify either suspect or read the truck license plate, he did observe a distinctive rust spot on the roof of the truck along with multiple stickers on the back window.  (FTR 11:01:02 – 11:01:18, 11:02:15 – 11:02:26.)  Corporal Adams believed the video established probable cause because there is no alligator season in Warren County, a hook cannot be used to catch alligators in counties where alligator hunting is legal, and the Kitchens

family had not given anyone permission to hunt on their land.  (FTR 11:01:19 – 11:01:47.)

On May 17, 2017, Deputy Chett Jones of the Warren County Sheriff's Office observed the truck from the surveillance video running a stop sign and initiated a traffic stop.  (FTR 11:04:10 – 11:04:19, 11:04:24 – 11:04:32.)  Tamara Hutchinson was the driver and informed Deputy Jones she lived with Defendant at 1852 East Warrenton Road.  (FTR 11:04:32 – 11:04:47.)  Deputy Jones ran the license plate and confirmed Defendant was the owner.  (FTR 11:35:56 – 11:36:05.)

One week later on May 24, 2017, Corporal Adams showed the pond surveillance video to Defendant's probation officer, Mark Johnson.  (FTR 11:05:18 – 11:05:43.)  Officer Johnson identified Defendant as one of the two suspects.  (FTR 11:05:43 – 11:05:48.)  Corporal Adams determined Defendant was a convicted felon and thus prohibited from possessing the rifle depicted in the video.  (FTR 11:09:02 – 11:09:14.)

The affidavit and application for the search warrant drafted by Corporal Adams states in pertinent part:

> The undersigned Cpl. Brian Adams, being duly sworn, deposes and says:
>
> I am an officer of the State of Georgia or its political subdivision charged with the duty of enforcing the criminal laws, and that I have reason to believe that in Warren County, Georgia, on the person, premises, or property described as follows:
>
> Residence, all out buildings, vehicles and property at 1852 E Warrenton Rd Warrenton, GA.
>
> There is now located certain instruments, articles, persons, or things, namely: Any firearms or ammunition. Any alligator or parts of alligators. Any equipment or devices used to illegally take alligators. Any electronic equipment that may have been used the recording of the illegal taking of alligators such as but not limited to cellular phones, cameras and tablets. [Keywords], which are being possessed in violation of Georgia Law(s):

       27-3-15 Hunting alligators out of season
       27-3-4 Hunting alligators with illegal weapons
       16-11-131 Possession of firearm by convicted felon

(Doc. no. 19, p. 10.)  In contrast, the warrant states, in pertinent part, as follows:

> Affidavit having been made before me by Cpl. Brian Adams, an officer charged with the duty of enforcing the Criminal Laws, that he or she has reason to believe that in Warren County, Georgia, on the following described person, premises, or property:
>
> Residence, all out buildings, vehicles and property at 1852 E Warrenton Rd Warrenton, GA.
>
> There is now located certain instruments, articles, persons, or things, namely: [Keywords], which are being possessed in violation of Georgia Law(s):
>
> 27-3-15 Hunting alligators out of season
> 27-3-4 Hunting alligators with illegal weapons
> 16-11-131 Possession of firearm by convicted felon

(Id. at 13.)

The list of items to be seized in the affidavit and application is omitted from the warrant, and in its place is the reference to "[Keywords]."  (Id.)  Corporal Adams drafted the documents on his office computer, using standard Georgia state electronic forms that populate in the warrant information typed in certain fields in the affidavit and application.  (FTR 11:06:08 – 11:06:11, 11:06:17 – 11:06:22, 11:06:45 – 11:06:49, 11:07:05 – 11:07:16.)  The Georgia forms consolidate the affidavit and application into a single document.  (Doc. no. 19, pp. 10-11.)  Corporal Adams testified the omission was a result of him mistakenly typing the list of items to be seized outside of the keywords field in the affidavit and application, which is why the keywords field is referenced in brackets in the affidavit and application as well as the warrant.  (FTR 11:09:44 – 11:10:10.)  Had he typed the list within the brackets of the affidavit and application, the keywords reference would have disappeared in both documents and been replaced with the list.

4

(<u>Id.</u>)  Notably, the affidavit and application incorrectly included a no-knock request from a prior investigation and erroneously lists the criminal history of the prior target.  (Doc. no. 19, p. 11; FTR 11:36:52 – 11:37:04.)  Corporal Adams did not conduct a no-knock search and only noticed the incorrect no-knock provision after execution of the search.  (FTR  11:37:30 – 11:37:36.)

Corporal Adams reviewed the documents before presenting them to Warren County Magistrate Judge Janice Thigpen but did not notice omission of the list in the warrant.  (FTR 11:21:25 – 11:21:43.)  Before Judge Thigpen signed the warrant, Corporal Adams explained every factual detail of the investigation recounted *supra*, including how Corporal Adams determined Defendant resided at 1852 East Warrenton Road, and showed Judge Thigpen the pond surveillance video.  (FTR 11:11:10 – 11:11:34, 11:12:11 – 11:12:14.)

Corporal Adams recruited eight DNR officers, four Warren County deputies, and two ATF agents to conduct the search on May 26, 2017.  (FTR 11:12:48 – 11:12:55.)  Before the team could conduct their planning meeting that morning, however, another landowner reported three people fishing on his pond without permission.  (FTR 11:14:40 – 11:14:50.)  Corporal Adams responded to the call and arrested Defendant, Tamara Hutchinson, and Jay Blair.  (FTR 11:14:53 – 11:15:03, 11:15:27 – 11:15:34.)    Defendant and Ms. Hutchinson confirmed their address was 1852 East Warrenton Road.  (FTR 11:15:47 – 11:15:50.)  The vehicle at the scene of the arrest contained a spool of rope matching a rope tied to the treble hook at the Kitchens' pond.  (FTR 11:16:04 – 11:16:16.)

After making the arrests, Corporal Adams met the team at the driveway of 1852 East Warrenton Road to review the operational plan, describe the role of each officer, and review the list of items to be seized as authorized by Judge Thigpen.  (FTR 11:16:36 – 11:17:03, 11:17:09 – 11:17:20.)  Even though he had a copy of the affidavit and application and warrant with him and

used those documents during the planning meeting with the team, Corporal Adams still did not notice the omission from the warrant of the items to be seized.  (FTR 11:25:35 – 11:25:50, 11:25:58 – 11:26:06, 11:38:33 – 11:38:12.)

Execution of the warrant followed the team meeting and according to Corporal Adams was "very smooth."  (FTR 11:17:35 –  11:17:43.)  Inside a vehicle at the residence, officers found a large hook matching one at the Kitchens' pond, white string tied in a manner consistent with alligator hunting, and a fishing pole with a treble hook.  (FTR 11:18:25 – 11:18:42, 11:34:40 – 11:34:50.)  Inside the residence, the team found fourteen firearms, hundreds of rounds of ammunition, more than $22,000 in cash, and numerous containers of methamphetamine and marijuana.  (FTR 11:18:59 – 11:19:05, 11:19:15 – 11:19:18, 11:19:27 – 11:19:45.)  The truck from the surveillance video was parked at the residence.  (FTR 11:36:25 – 11:36:31.)

Virginia Burke, Defendant's sister, arrived before completion of the search, and Corporal Adams provided her with a copy of the warrant and evidence logs listing all items seized during the search.  (FTR 11:26:45 – 11:27:11.)  Corporal Adams did not provide Ms. Burke with a copy of the affidavit and application, nor did he read to her the description of items authorized to be seized.  (FTR 11:27:53 – 11:28:44, 11:39:10 – 11:39:18, 11:40:05 – 11:40:16.)

## II.     DISCUSSION

### A.      Probable Cause Supported the Search Warrant.

Defendant argues the search warrant lacked probable cause because it failed to connect Defendant to the residence and the residence to the criminal activity under investigation.  (Doc. no. 19, pp. 3-5.)  As explained below, Corporal Adams' sworn affidavit and application and testimony before Judge Thigpen established both connections and

provided probable cause for the warrant.

A reviewing court gives great deference to a judicial officer's determination of probable cause and must only ensure there was a substantial basis for concluding probable cause existed.  Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (quoting Illinois v. Gates, 462 U.S. 213, 238-39); United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011).  The issuing judge must make a practical, common sense decision whether the totality of the circumstances supports the conclusion there is a fair probability that contraband or evidence of a crime will be found in a particular place.  United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013); United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000).  The supporting affidavit "'should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'"  United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013) (quoting United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)).

Corporal Adams' affidavit and application and sworn testimony before Judge Thigpen provided a substantial basis for Judge Thigpen's finding of probable cause to issue the search warrant.  Corporal Adams established a clear connection between Defendant and the residence by explaining to Judge Thigpen under oath that (1) Deputy Jones determined the distinctive truck captured in the surveillance video belonged to Defendant during his traffic stop of Ms. Hutchinson; (2) Ms. Hutchinson informed Deputy Jones she lived with Defendant at 1852 East Warrenton Road; and (3) Probation Officer Mark Johnson positively identified Defendant as one of the two suspects in the surveillance video.

There was also a reasonable basis for believing Defendant would keep evidence of the crimes at his residence, thereby connecting the residence with the criminal activity under

investigation. Corporal Adams testified at the hearing people typically bring captured alligators home to process in areas like Warren County where alligator hunting is illegal and there are no alligator processing businesses. (FTR 10:53:01 – 10:53:12, 10:53:34 – 10:53:39.) While the record contains no indication he provided this specific information to Judge Thigpen, his affidavit and application do state generally his reasonable belief that evidence and instrumentalities of the crimes charged were at Defendant's residence. (Doc. no. 19, pp. 10-11.)

Furthermore, there is a substantial basis for Corporal Adams' belief within the facts he conveyed to Judge Thigpen. Indeed, common sense dictates that hunters keep hunting devices and quarry in their vehicles and homes, and felons in possession of firearms often store them in the same locations. Defendant's storage of these items at his home and within his truck was all the more likely here since the Kitchens' pond was only one mile away from Defendant's residence and the pond surveillance video shows Defendant storing a rifle and alligator hunting equipment in his truck. (FTR 11:04:34 – 11:04:47.) Based on this information, Judge Thigpen had a substantial basis for concluding Defendant likely stored firearms and evidence of alligator hunting within his residence and vehicles, a "safe yet accessible place" for those items. United States v. Kapordelis, 569 F.3d 1291, 1310, 1311 (11th Cir. 2009) ("Given due weight to inferences drawn from facts by the magistrate judge who issued the search warrant and the law enforcement officers investigating [defendant's] activities, we conclude that there was probable cause to support the issuance of a search warrant for [defendant's] home.")

For these reasons, Corporal Adams' affidavit and application and oral testimony provided Judge Thigpen with a substantial basis for her finding of probable cause. See

Cauchon, 824 F.2d at 911-12.

> **B.   The Warrant Is Facially Invalid Because It Contains No Description of the Items Judge Thigpen Authorized Corporal Adams to Seize.**

Defendant argues the search warrant is facially invalid because it fails to describe the items to be seized.  (Doc. no. 19, p. 5.)  The Fourth Amendment's particularity requirement prevents "general, exploratory rummaging in a person's belongings."  United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982) (citations omitted).  A warrant that fails sufficiently to particularize the place or things to be seized is unconstitutionally overbroad and the resulting search is unconstitutional.  United States v. Travers, 233 F.3d 1327, 1329-30 (11th Cir. 2000); Mitchell, 503 F. App'x at 754.  A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized.  Bradley, 644 F.3d at 1259.  Technical perfection in the description is not required, but rather the Court should apply a practical margin of flexibility.  Id.

The affidavit and application for a search warrant prepared by Corporal Adams described the items to be seized as follows:

> There is now located certain instruments, articles, persons, or things, namely: Any firearms or ammunition. Any alligator or parts of alligators. Any equipment or devices used to illegally take alligators. Any electronic equipment that may have been used the recording of the illegal taking of alligators such as but not limited to cellular phones, cameras and tablets. [Keywords], which are being possessed in violation of Georgia Law(s):
>
> 27-3-15 Hunting alligators out of season
> 27-3-4 Hunting alligators with illegal weapons
> 16-11-131 Possession of firearm by convicted felon

(Doc. no. 19, p. 10.)

In contrast, the search warrant omits the list of items to be seized and provides nonsensically as follows:

> There is now located certain instruments, articles, persons, or things, namely: [Keywords], which are being possessed in violation of Georgia Law(s):
>
> 27-3-15 Hunting alligators out of season
> 27-3-4 Hunting alligators with illegal weapons
> 16-11-131 Possession of firearm by convicted felon.

(Id. at 13.)

Defendant is correct that the warrant is fatally flawed in its failure to describe the items to be seized pursuant to Groh v. Ramirez, 540 U.S. 551, 562 (2004).  At issue in Groh was a warrant that failed to describe the items to be seized.  Instead, in the space designated for this purpose, the warrant merely described a two-story blue house.  Id. at 554.  The supporting application included a detailed description of the items to be seized, but the warrant did not incorporate by reference the application, and the agent did not provide the homeowner with a copy of the application because it was sealed.  Id. at 557-58.  Nothing provided to the homeowner contained any description of the items to be seized.  The homeowner sued the executing agents, and the Supreme Court held the warrant was "plainly invalid" under the Fourth Amendment and the agents were not entitled to qualified immunity.  Id. at 558-59.

In the case *sub judice*, the warrant is invalid like the warrant in Groh because it describes the items to be seized as "[Keywords]."  (Doc. no. 19, p. 13.)  While the list of items to be seized in the affidavit and application is sufficiently detailed, it does not save the warrant.

The longstanding rule in the Eleventh Circuit is that (1) a warrant may incorporate by reference another document's description of items to be seized; and (2) even if a warrant fails to incorporate by reference, the warrant is still valid so long as the document containing the

description is attached to the warrant and accompanies it at the time of execution. Wuagneux, 683 F.2d at 1350 n.6; see also Battle v. Webb, 298 F. App'x 882, 884-84 (11th Cir. 2008) (finding incorporated attachment satisfies particularity requirement).   The problem, however, is that the warrant does not incorporate by reference the affidavit and application, and Corporal Adams did not attach it to the warrant he gave Ms. Burke.  See also United States v. Crabtree, No. 14-0288-WS, 2015 WL 631364, at *1-2 (S.D. Ala. Feb. 13, 2015) (finding facially invalid warrant insufficient where particularized affidavit not incorporated or attached to warrant); United States v. Glenn, CR 609-027, 2009 WL 2390353 at *3 (S.D. Ga. July 29, 2009), *adopted by* CR 609-027, 2009 WL 2631016 (S.D. Ga. Aug. 24, 2009) (Edenfield, J.) (same).

The government argues the warrant sufficiently describes the items to be seized by specifying the three Georgia code sections Defendant was suspected of violating.  In support, the government cites United States v. Santarelli, 778 F.2d 609 (11th Cir. 1985).  Therein, the Eleventh Circuit found a warrant was not overbroad even though it authorized the seizure of "all property constituting evidence of the crimes . . . in violation of Title 18, United States Code, §§ 892, 893, and 894."  Santarelli, 778 F.2d at 613-14.  The Eleventh Circuit more recently followed Santarelli in Signature Pharmacy, Inc. v. Wright, 438 F. App'x 741, 745 (11th Cir. 2011), by upholding a warrant authorizing seizure of items constituting "evidence of a criminal violation" of specified Florida statutes.

Both of these cases are materially distinguishable because they involved complicated white-collar crimes, such as loansharking and illegal drug sales by pharmacists, where more specific information about the items to be seized was not available.  Santarelli, 778 F.2d at 615; Signature Pharmacy, Inc., 438 F. App'x at 745-46.  The Eleventh Circuit upheld the

warrants in both instances because it found the general descriptions of items to be seized were as specific as the circumstances and nature of the activities under investigation permitted.  Santarelli, 778 F.2d at 615; Signature Pharmacy, Inc., 438 F. App'x at 745-46.

Corporal Adams cannot credibly claim difficulty in developing a more specific list of items to be seized because he actually developed a specific list that he included in the affidavit and application but mistakenly omitted from the warrant.  In addition, even if this had been a situation in which Corporal Adams truly could not develop a list of specific items due to the complicated nature of the investigation, his warrant does not authorize officers to seize all property constituting evidence of code violations like the warrants in Santarelli and Signature Pharmacy.  Instead, it nonsensically authorizes seizure of "certain instruments, articles, persons, or things, namely: [Keywords], which are being possessed in violation of" the three enumerated code sections.  (Doc. no. 19, p. 13.)

The government also cites United States v. Long, 300 F. App'x 804, 812-13 (2008), in which the Eleventh Circuit upheld a warrant that failed to specify the items to be seized because an attachment to the warrant contained a list of the items to be seized.  This decision however, is merely a straightforward application of the longstanding rule in the Eleventh Circuit that a warrant missing a description of items to be seized is still valid so long as the document containing the description is attached to the warrant.  Wuagneux, 683 F.2d at 1350 n.6.

The government appears to read Long as standing for the proposition that a detailed list of items to be seized in an attachment saves a warrant so long as the attachment is presented to the issuing judge and the search team, and regardless of whether the attachment accompanies the warrant when served upon the landowner.  This reading assumes the

attachment in <u>Long</u> did not accompany the warrant at the time of delivery to the landowner, but nothing in <u>Long</u> suggests this to be true.  Instead, the attachment accompanies the warrant every time it is mentioned in the decision and is critical to the Eleventh Circuit's holding that the warrant is valid.

Such a reading of <u>Long</u> also flies in the face of <u>Groh</u>, wherein the Supreme Court explained the particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."  <u>Groh</u>, 540 U.S. at 561 (quotation omitted).  This "high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection."  <u>Id.</u> at 557.

### C.   Because the Search Warrant Was So Facially Deficient No Reasonable Officer Would Presume It Is Valid, the Good Faith Exception Does Not Apply.

Finally, the government argues the Court should not suppress the evidence seized from 1852 East Warrenton Road because the "good faith" exception to the exclusionary rule applies here.  (Doc. no. 22, pp. 14-17.)  The exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search.  <u>Martin</u>, 297 F.3d at 1312.  However, under <u>Leon</u>, the good faith exception allows the introduction of evidence in the prosecution's case in chief "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . ."  <u>United States v. Leon</u>, 468 U.S. 897, 913 (1984).  The <u>Leon</u> Court explained the good faith exception to the exclusionary rule is appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  <u>Id.</u> at 916.  Thus,

13

under <u>Leon</u>, the question becomes whether the officers executing the warrant reasonably relied on the issuing Magistrate Court Judge's determination of probable cause.  <u>Id.</u> at 913; <u>see also</u> <u>United States v. Herring</u>, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause.").

Under <u>Leon</u>, there are four scenarios under which the good faith exception to the exclusionary rule would not apply.  The exception does not apply where the judge issuing the warrant was misled by information in an affidavit the affiant knew was false or would have known was false except for his reckless disregard of the truth.  <u>Leon</u>, 468 U.S. at 923.  Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant.  <u>Id.</u>  The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid.  <u>Id.</u>

In <u>Groh</u>, the Court found "even a cursory reading of the warrant . . . would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal" and denied qualified immunity for the petitioner. <u>Groh</u>, 540 U.S. at 564.  While the Court applied this standard in the context of qualified immunity, it stated the "same standard of objective reasonableness" is used when determining whether the good faith exception applies.  <u>Id.</u> at 565 n.8 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 344 (1986)).

Here, as in <u>Groh</u>, the search warrant was facially deficient because it failed to list any particular items to be seized.  (Doc. no. 19, p. 13.)  Also, because Corporal Adams drafted

the search warrant himself, he could not have reasonably relied on the magistrate judge's assurance the warrant was adequate.  Groh, 540 U.S. at 564.  Thus, the Court finds the warrant was so facially deficient the executing officers could not reasonably rely on it.  Accordingly, the good faith exception to the exclusionary rule does not apply here.

## III.   CONCLUSION

Because the warrant was facially invalid by failing to particularize the items to be seized, the search of 1852 East Warrenton Road on May 26, 2017, violated Defendant's rights under the Fourth Amendment, and the evidence gained as a result of the search should be suppressed.   Accordingly, the Court **REPORTS** and **RECOMMENDS** Defendant's Motion to Suppress (doc. no. 19) be **GRANTED.**

SO REPORTED and RECOMMENDED this 19th day of October, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA